**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

_____
                                    )
METROPOLITAN PROPERTY & CASUALTY    )
INSURANCE COMPANY,                  )
                                    )
                 Plaintiff,         )
                                    )   Civil Action
v.                                  )   No. 13-13126-PBS
                                    )
SUSAN DEVLIN, MARY DESROSIER,       )
MATTHEW DESROSIER, and JOHN DOE,    )
PERSONAL REPRESENTATIVE OF THE      )
ESTATE OF JOSEPH SIMEONE,           )
                                    )
                 Defendants.        )
_____)

**MEMORANDUM AND ORDER**

August 21, 2018

Saris, C.J.

**INTRODUCTION**

This long-running case arises from a car accident in Saugus, Massachusetts, in 2010. Susan Devlin was injured in the accident when a Ford Taurus, owned by Mary Desrosier but driven by her son Matthew Desrosier, collided with Devlin's car.[1] In state court, a jury found Matthew liable for negligent operation of a motor vehicle and Mary liable for negligent failure to secure her vehicle from the harmful effects of foreseeable

---

[1] Throughout the rest of this memorandum and order, the Court refers to the Desrosiers by their first names -- Mary and Matthew -- to avoid confusion.

1

criminal actions. Metropolitan Property & Casualty Insurance Company ("Metropolitan") filed a declaratory judgment action in this Court in 2013, seeking an order that it has no duty to defend or indemnify Mary or Matthew. In 2015, the Court held that Metropolitan had no duty to defend Matthew. See Metro. Prop. & Cas. Ins. Co. v. Devlin, 95 F. Supp. 3d 278, 282 (D. Mass. 2015).

Based on the state court verdict, Metropolitan moves for summary judgment on the ground that the insurer has no duty to indemnify Mary for Devlin's injuries. Alternatively, Metropolitan argues that it is entitled to a declaratory judgment stating that its duties to indemnify and to pay any prejudgment interest are capped at the compulsory coverage limit in the policy. Devlin did not submit a cross-motion for summary judgment, but at the hearing on June 29, 2018, she agreed that there were no questions of fact for trial and that the Court could decide the remaining issues of indemnification as a matter of law. See Fed. R. Civ. P. 56(f) (allowing court to grant summary judgment for nonmovant "[a]fter giving notice and a reasonable time to respond").

Metropolitan's motion for summary judgment (Docket No. 112) is **ALLOWED IN PART** and **DENIED IN PART**, and partial summary judgment is **ALLOWED** for Devlin. Metropolitan must indemnify Mary up to the $20,000 compulsory coverage limit.

# FACTS

The following facts are undisputed unless otherwise stated.

## I. Car Accident and State Court Trial

In 2010, Mary owned a 1998 Ford Taurus that was insured by Metropolitan. Docket No. 117-1 ¶ 2. On October 27, 2010, there was an accident at an intersection in Saugus, in which Mary's Taurus rear-ended Devlin's car. See Docket No. 117-1 ¶ 1.

Matthew was driving Mary's Taurus at the time of the accident, Docket No. 117-1 ¶ 16, but he did not have a valid driver's license, Docket No. 117-1 ¶ 18. Mary knew that he was not licensed. Docket No. 117-1 ¶ 18. On the date of the accident, Mary did not give Matthew permission to drive her car. Docket No. 117-1 ¶ 18. In fact, Mary had explicitly instructed Matthew never to drive her Taurus. Docket No. 117-1 ¶ 28. She did, however, leave the car keys unsecured and available to anyone in her house. Docket No. 117-1 ¶ 29.

The state court case, brought by Devlin against Matthew and Mary,[2] was tried to a jury in February 2017. Docket No. 117-1 ¶ 26. Matthew was found liable for negligent operation of the car. See Docket No. 117-1 ¶¶ 22, 37. Against Mary, Devlin brought two

---

[2] Devlin also brought a claim for negligent entrustment against the Estate of Joseph Simeone, a passenger in the Taurus at the time of the accident and the person to whom Mary gave consent to drive that day. See Docket No. 117-1 ¶ 33. Simeone's estate was found not liable by the jury. Docket No. 117-1 ¶ 36.

3

counts: one for negligent entrustment of the Taurus, and one for negligent failure to secure her vehicle from the harmful effects of foreseeable criminal actions. Docket No. 117-1 ¶ 23. Judge Krupp instructed the jury on the negligent security claim as follows:

> To establish a claim for negligent security, Ms. Devlin must prove by a preponderance of the evidence the following four elements:
> One, that Ms. Desrosier had ownership or control of a motor vehicle;
> Two, that Ms. Desrosier knew or should have known that there was a reasonable possibility of criminal conduct involving the motor vehicle including the use of her motor vehicle by someone without authority to use it;
> Three, that Ms. Desrosier negligently failed to take steps reasonably available to prevent the foreseeable criminal conducting [sic] involving the motor vehicle;
> And four, the damages caused by Ms. Desrosier's failure to do so and the resulting foreseeable criminal conduct.

Docket No. 117-1 ¶ 32. Mary was found not liable for negligent entrustment, but liable for negligent failure to secure. Docket No. 117-1 ¶ 35. The jury awarded Devlin $210,601.80 for her injuries, including prejudgment interest. Docket No. 117-1 ¶ 37.

## II. Insurance Policy

### A. Bodily Injury Coverage

Mary's Taurus was insured by Metropolitan under the standard Massachusetts Automobile Insurance Policy (Seventh Edition). Docket No. 117-1 ¶ 2. The insurance contract "consist[ed] of [the standard auto policy], the Coverage

4

Selections Page, any endorsements agreed upon, and [Mary's] application for insurance." Docket No. 114-1 at 15. When the policy actually took effect is not clear in the record because there are multiple dates on the document. First, the policy says that it is "effective from" March 28, 2010, to March 28, 2011. Docket No. 114-1 at 8. The Coverage Selections Page is dated July 6, 2010, but it also includes the date of July 3, 2010, next to the words "Change 4." Docket No. 114-1 at 8. Regardless of the precise effective date, at the time of the accident, Mary's Taurus was covered by Metropolitan policy number 2398528494. Docket No. 114-1 at 8.

Under her policy, Mary had $20,000 of compulsory coverage and up to $100,000 of optional coverage for bodily injury to others. Docket No. 117-1 ¶ 3. The compulsory coverage section -- "Part 1. Bodily Injury to Others" -- reads in relevant part:

> Under this Part, we will pay damages to people injured or killed by your auto in Massachusetts accidents. The damages we will pay are the amounts the injured person is entitled to collect for bodily injury through a court judgment or settlement. We will pay only if you or someone else using your auto with your consent is legally responsible for the accident.
> . . .
> The law provides a special protection for anyone entitled to damages under this Part. We must pay their claims even if false statements were made when applying for this policy or your auto registration.

5

Docket No. 114-1 at 16. The optional coverage section -- "Part 5. Optional Bodily Injury to Others" -- reads in relevant part:

> Under this Part, we will pay damages to people injured or killed in accidents if you or a household member is legally responsible for the accident. We will also pay damages if someone else using your auto with your consent is legally responsible for the accident. The damages we will pay are the amounts the injured person is entitled to collect for bodily injury through a court judgment or settlement.
> This Part is similar to Compulsory Bodily Injury To Others (Part 1). Like the Compulsory Part, this Part pays for accidents involving your auto in Massachusetts. Also like the Compulsory Part, this Part does not pay for the benefit of anyone using an auto without the consent of the owner.

Docket No. 114-1 at 25.

**B.    Operator Exclusion Provisions**

Long before the accident, Mary and Matthew had signed an "Operator Exclusion Form" dated February 4, 2005. Docket No. 114-1 at 50. The form states that Matthew is an excluded operator for a 1998 Honda under policy number 0313492094 -- a different number than the one assigned to the 2010 policy, number 2398528494. Docket No. 114-1 at 50. The 2005 Operator Exclusion Form also states: "It is agreed that the person named below will not operate the vehicle(s) described below, or any replacement thereof, under any circumstance whatsoever." Docket No. 114-1 at 50.

Randy Daniels, a Senior Claims Examiner for Metropolitan, swears in his affidavit that in July 2010, Mary requested that

Metropolitan substitute the Taurus for the 1998 Honda under her 2010 insurance policy. Docket No. 114-1, Daniels Aff. ¶ 11. Mary, on the other hand, testified that she sold her 1998 Honda and canceled that insurance policy months before initiating a new Metropolitan policy to cover the Taurus. Docket No. 117-1 ¶ 7. Regardless of what actually occurred, the parties agree that the 2010 insurance contract was a new policy, not a continuation of a previous policy.

On the Coverage Selections Page for the 2010 policy, in the section titled "Identification Numbers of Endorsements Forming a Part of This Policy," the only codes listed are "V911," "MA660," and "MPY-0016-S." Docket No. 114-1 at 8. The list does not include "M-106-S," which is the identification number for the 2005 Operator Exclusion Form. Docket No. 114-1 at 50. The Coverage Selections document also lists Mary (Operator 1), Matthew (Operator 2), and Jennifer Mason (Operator 3), as operators of the Taurus. Docket No. 114-1 at 9. Matthew has a "Y" next to his name in the "Approved Driver Training" column. Docket No. 114-1 at 9. On the next page, "DRIVER 2" and "DRIVER 3" are listed as "EXCLUDED FROM VEHICLE(S) 1." Docket No. 114-1 at 10.

**DISCUSSION**

I.  **Legal Standards**

   A.  **Summary Judgment**

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To succeed, the moving party must demonstrate that there is an "absence of evidence to support the nonmoving party's case." Sands v. Ridefilm Corp., 212 F.3d 657, 661 (1st Cir. 2000) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)). The burden then shifts to the nonmoving party to set forth specific facts showing that there is a genuine issue of material fact for trial. Quinones v. Buick, 436 F.3d 284, 289 (1st Cir. 2006). A genuine issue exists where the evidence is "sufficiently open-ended to permit a rational factfinder to resolve the issue in favor of either side." Nat'l Amusements, Inc. v. Town of Dedham, 43 F.3d 731, 735 (1st Cir. 1995). A material fact is "one that has the potential of affecting the outcome of the case." Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 19 (1st Cir. 2004) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248–50 (1986)).

Here, Metropolitan and Devlin agreed at the hearing that there is no dispute as to any material fact and that the only

remaining questions are pure legal issues of insurance contract interpretation.

   **B. Interpretation of Insurance Policies**

The interpretation of an insurance contract is a question of law. Allmerica Fin. Corp. v. Certain Underwriters at Lloyd's, London, 871 N.E.2d 418, 425 (Mass. 2007). "An insurance policy is construed under Massachusetts law using the general rules of contract interpretation." CWC Builders, Inc. v. United Specialty Ins. Co., 134 F. Supp. 3d 589, 597 (D. Mass. 2015). This means that the policy is "to be interpreted 'according to the fair and reasonable meaning of the words in which the agreement of the parties is expressed.'" Allmerica Fin. Corp., 871 N.E.2d at 425 (quoting Cody v. Conn. Gen. Life Ins. Co., 439 N.E.2d 234, 237 (Mass. 1982)). Each word is "presumed to have been employed with a purpose and must be given meaning and effect whenever practicable." Id. (quoting Jacobs v. U.S. Fid. & Guar. Co., 627 N.E.2d 463, 464 (Mass. 1994)).

Courts resolve ambiguities in the standard Massachusetts car insurance policy according to their fair meaning. See Chenard v. Commerce Ins. Co., 799 N.E.2d 108, 110 (Mass. 2003) ("Because the language of the standard Massachusetts automobile policy is set by the Commissioner of Insurance . . . , it is exempt from the rule of construction requiring ambiguities to be resolved against the insurer. Rather, the language should be

9

construed in its usual and ordinary sense." (internal citations omitted)).

## II. Part 1 (Compulsory Insurance for Bodily Injury to Others)

Metropolitan argues that it is entitled to a declaratory judgment that it has no duty to indemnify Mary -- even under the compulsory coverage provision -- because the undisputed facts show that Matthew was operating the Taurus without her permission. In Metropolitan's view, both Part 1 and Part 5 expressly disclaim any duty to indemnify when the operator was driving without the owner's consent. However, Devlin argues that in these circumstances, where the jury found Mary "legally responsible" for the accident, the contract language requires Metropolitan to indemnify her.

Metropolitan hinges its argument on language contained in Part 5: "This Part is similar to Compulsory Bodily Injury To Others (Part 1). . . . [L]ike the Compulsory Part, this Part does not pay for the benefit of anyone using an auto without the consent of the owner." Docket No. 114-1 at 25. Part 1 also says: "We will pay only if you or someone else using your auto with your consent is legally responsible for the accident." Docket No. 114-1 at 16. Taking these two clauses together, Metropolitan maintains that the policy "clearly excludes coverage for accidents caused by an individual operating the vehicle without the permission of the owner." Docket No. 113 at 9–10.

Massachusetts courts have held that when the operator is driving without the insured's consent, the insurance company has no duty to indemnify the driver. See Picard v. Thomas, 802 N.E.2d 581, 588-89 (Mass. App. Ct. 2004); Hanover Ins. Co. v. Locke, 624 N.E.2d 615, 616-17 (Mass. App. Ct. 1993). Here, however, Metropolitan goes further and argues that because Matthew was driving without Mary's consent, it owes no duty to indemnify the insured (Mary).

In support, Metropolitan cites to Higgenbottom v. Aetna Casualty & Surety Co., 425 N.E.2d 370 (Mass. App. Ct. 1981), a rescript the company says is "decidedly on point to the instant matter." Docket No. 113 at 11. In that case, the insured's son took the car keys while the insured was asleep and injured someone in an accident. Higgenbottom, 425 N.E.2d at 371–72. The insured's son did not have permission to drive. Id. The injured person brought a tort action against the insured and the insured's son, and judgment was entered in the plaintiff's favor. Id. at 371. The injured person then brought an action against the insurance company, "alleging that its refusal to investigate the accident fully, to settle the plaintiff's claim, and to defend its insured were unfair and deceptive acts" under Mass. Gen. Laws ch. 93A and ch. 176D. Id. The Massachusetts Court of Appeals affirmed the trial court's decision, holding that the insurer had no duty to defend the insured because the

operator was driving without the insured's consent.[3] See id. at 372.

But the Court finds Higgenbottom is not controlling authority in this case. The Higgenbottom court did not engage in any interpretation of the standard auto insurance contract or quote any contract language.[4] It did not need to undertake this analysis because the plaintiff never disputed that "because the insured's son had driven the car without the insured's permission, there was no coverage under the policy." Id. But here, Devlin is disputing the issue of coverage. Moreover, because the opinion was a rescript, it does not specify whether the insured was found to be "legally responsible" for the accident, as Mary was in this case. See id. at 371. Although the court stated that the plaintiff sought damages against the insured and his son, the only claim discussed in the case is for the "son's negligent operation of the insured's motor vehicle," which "caused" the accident. Id.

---

[3] The duty to defend is broader than the duty to indemnify. See Devlin, 95 F. Supp. 3d at 281 ("If the Court finds that Metropolitan has no duty to defend, the insurance company as a matter of course also has no duty to indemnify.").

[4] Metropolitan has provided the Court with the standard Massachusetts Automobile Insurance Policy that was in effect in 1978. See Docket No. 124-1. The 1978 policy appears to include language similar to the compulsory bodily injury coverage section in Mary's policy. See Docket No. 124-1 at 8. However, the Higgenbottom court did not expressly rely on the language.

Interpreting the contract language of Mary's policy, Devlin emphasizes the disjunctive construction of Part 1: "We will pay only if you <u>or</u> someone else using your auto with your consent is legally responsible for the accident." Docket No. 114-1 at 16 (emphasis added). "It is fundamental to statutory construction that the word 'or' is disjunctive, 'unless the context and the main purpose of all the words demand otherwise.'" <u>Bleich v. Maimonides Sch.</u>, 849 N.E.2d 185, 191 (Mass. 2006) (quoting <u>E. Mass. St. Ry. v. Mass. Bay Transp. Auth.</u>, 214 N.E.2d 889, 892 (Mass. 1966)). Based on this construction, Devlin says that Metropolitan must indemnify Mary, regardless of the fact that Matthew was driving without her consent, because the jury found Mary liable -- "legally responsible" -- for the accident under a negligent failure to secure theory. <u>See</u> Docket No. 117 at 6-9; Docket No. 117-1 ¶ 35.

This construction also does not conflict with the language in Part 5, which states that neither Part 5 nor Part 1 will "pay for the benefit of anyone using an auto without the consent of the owner." Docket No. 114-1 at 25. By indemnifying Mary, Metropolitan would not be paying for the benefit of a driver operating without the owner's consent; rather, it would be paying for the benefit of the owner herself, who was the insured.

Finally, Metropolitan tries to rely on this Court's earlier opinion in the case to say that Mary had to be "using" the car during the accident for the insurance policy to apply. See Devlin, 95 F. Supp. 3d at 282. The earlier opinion, however, was focused on the negligent entrustment claim against Mary, rather than the negligent security claim. See id. at 282–83. Under the terms of the policy, Mary's use of the car is not required. See Docket No. 114-1 at 14 (defining "[a]ccident" as "an unexpected, unintended event that causes bodily injury or property damage arising out of the owner-ship, maintenance or use of an auto"). She needs only to be "legally responsible" for the accident to be indemnified.

Because Mary was found "legally responsible" by the jury, Devlin's injuries are covered under the fair and reasonable meaning of the policy. Metropolitan's motion for summary judgment is denied on this issue. At the hearing, the parties agreed that the issue should be decided as a matter of law. Accordingly, the Court grants summary judgment for the nonmovant, pursuant to Fed. R. Civ. P. 56(f), and holds that Metropolitan must indemnify Mary up to the $20,000 compulsory coverage limit.

### III. Part 5 (Optional Insurance for Bodily Injury to Others)

Under the same analysis, Devlin's injuries fall within the coverage of Part 5. See Docket No. 114-1 at 25 ("Under this Part

[5], we will pay damages to people injured or killed in accidents if you or a household member is legally responsible for the accident."). Metropolitan argues, however, that Mary executed the 2005 Operator Exclusion Form for Matthew, but failed to prevent him from driving her car. See Docket No. 113 at 14-15. Metropolitan says this was either a material misrepresentation, which increased Metropolitan's risk of loss, or a material breach of the contract, either one of which would vitiate the insurance company's obligation to indemnify Mary beyond the compulsory limit. See Docket No. 113 at 12-13, 15.

Metropolitan is correct that if an insured makes a material misrepresentation about a fact that could influence the premium, the insurer may refuse to pay out on the policy, see Mass. Gen. Laws ch. 175, § 186(a); Barnstable Cnty. Ins. Co. v. Gale, 680 N.E.2d 42, 44 (Mass. 1997), except for the compulsory coverage amount, see Docket No. 114-1 at 16 ("The law provides a special protection for anyone entitled to damages under this [compulsory part]. We must pay their claims even if false statements were made when applying for this policy or your auto registration."). Moreover, the SJC has held that allowing an excluded operator to drive is a material breach of the insurance contract, which relieves the insurer of the duty to pay optional bodily injury

15

coverage. Commerce Ins. Co. v. Gentile, 36 N.E.3d 1243, 1245 (Mass. 2015) (rescript).[5]

In Gentile, policyholders executed an Operator Exclusion Form for their grandson that said he would not operate the insured vehicle or any replacement "under any circumstances whatsoever." Id. at 1244. After the initial term, the policy was renewed, and the grandson showed up on subsequent declarations pages "as having a status of 'E' for excluded." Id. By excluding their grandson, the policyholders paid lower premiums for the policy and renewals. Id. at 1244–45. Despite the Operator Exclusion Form, the grandson did drive the car covered by the policy and caused serious injuries to others in an accident. Id. at 1244. The SJC held that "[b]y allowing [their grandson] to operate their vehicle, or by not preventing him from doing so, the [policyholders] committed a breach of this material term of their insurance contract." Id. at 1245. "As a result of this breach, the Gentiles relieved [the insurer] of a duty to pay the optional coverage for bodily injury." Id.

Devlin raises the argument that the 2005 Operator Exclusion Form was not part of the 2010 insurance contract that covered Mary's Taurus. The Court agrees with Devlin on this point. Tellingly, the Coverage Selections Page does not list the

---

[5] The insurer in Gentile paid the compulsory coverage amount, however. See 36 N.E.3d at 1244 n.4.

Operator Exclusion Form's identification number as one of the "Endorsements Forming a Part of This Policy." See Docket No. 114-1 at 8. An additional fact demonstrating that the 2005 Operator Exclusion Form is not incorporated into the 2010 policy is that the policy numbers on the two documents differ. Compare Docket No. 114-1 at 8, with Docket No. 114-1 at 50.

But this conclusion does not defeat Metropolitan's argument that Mary's failure to prevent Matthew from driving her car constituted a material breach of the 2010 insurance policy. The 2010 Coverage Selections Page document lists Matthew as the second operator of the Taurus. Docket No. 114-1 at 9. Then, the next page reads: "DRIVER 2 EXCLUDED FROM VEHICLE(S) 1." Docket No. 114-1 at 10. In Gentile, the SJC discussed a similar fact pattern in a footnote and determined that the record supported the conclusion that the insurer and the insureds had agreed to exclude the grandson as an operator. See 36 N.E.3d at 1245 n.8. The insurer had automatically renewed the policy and Operator Exclusion Form without making any changes. Id. The insurer "provided notice to the Gentiles on the declarations page that [their grandson] was an excluded operator," and the Gentiles did not object to his exclusion on the renewed policy. Id. The SJC then noted that an insured who does not complain about a new policy's terms is presumed to have assented to those terms. See

17

id. (citing Epstein v. Nw. Nat'l Ins. Co., 166 N.E. 749, 750 (Mass. 1929)).

There is no indication in the record that Mary objected to Matthew's exclusion on the 2010 Coverage Selections Page when it was issued. Furthermore, the record shows that Mary understood that, under the 2010 policy, Matthew was not allowed to drive the Taurus. See, e.g., Docket No. 117-2 at 29:13-31:3; Docket No. 117-3 at 15:11-24. Based on the undisputed facts in the record, the Court concludes that Matthew's exclusion as an operator of the Taurus was a material term of the 2010 insurance policy, which Mary breached by failing to prevent him from driving the car. Accordingly, Metropolitan's motion for summary judgment is allowed with respect to the optional bodily injury coverage.

## IV. Prejudgment Interest Cap

Finally, Metropolitan asks for a declaratory judgment capping any award of prejudgment interest at the compulsory bodily injury limit of $20,000. Docket No. 113 at 15-17. Devlin does not oppose Metropolitan's request for a cap on the amount of prejudgment interest. See generally Docket No. 117. Because the Court has found that Metropolitan is only obligated to indemnify Mary up to $20,000, and because Devlin has not opposed this part of Metropolitan's motion, it is allowed.

**ORDER**

Metropolitan's motion for summary judgment (Docket No. 112) is **ALLOWED IN PART** and **DENIED IN PART**. Summary judgment is **ALLOWED** for Devlin with respect to the compulsory coverage. Metropolitan must indemnify Mary Desrosier for and pay any prejudgment interest up to the compulsory bodily injury coverage amount of $20,000, but is not obligated to pay the optional bodily injury coverage.

/s/ PATTI B. SARIS
Patti B. Saris
Chief United States District Judge